**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEVEN J. FEINSTEIN, M.D., et al., | : | CIVIL ACTION |
| **Plaintiffs** | : | |
| | : | |
| **vs.** | : | NO. 10-4050 |
| | : | |
| SAINT LUKE'S HOSPITAL, et al., | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                    **September  25, 2012**

In October 2011, I granted the defendants' motion to dismiss this action which had been brought under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*.  The defendants filed a motion for an award of attorneys' fees and costs. See 29 U.S.C. § 1132(g)(1).  The plaintiffs have responded in opposition.  For the following reasons, I find that the defendants are entitled to attorneys' fees and costs, and I will grant the motion except for the defendants' request for an upward adjustment of the lodestar.

**I.  BACKGROUND**

The plaintiffs were employed as specialist physicians at St. Luke's Hospital in Bethlehem, Pennsylvania until late November 2008.  They filed this action alleging violations of their ERISA rights in connection with the St. Luke's Hospital Pension Plan and St. Luke's Executive Retirement Benefit Restoration Plan.  The fourteen-count complaint also included common law claims for breach of fiduciary duty, breach of

contract, misrepresentation, tortious interference with business relationships/restriction of trade, and requests for injunctive relief.

The defendants filed a motion to dismiss the complaint which I granted following a hearing and careful review of the record. The defendants subsequently filed this motion as the successful party in this action.

## II.  STANDARD OF REVIEW

A district court has discretion to award a "reasonable attorney's fee and costs of action" under ERISA.  29 U.S.C. § 1132(g)(1).  However, fees may only be awarded to a party who achieves "some degree of success on the merits."  Hardt v. Reliance Standard Life Ins. Co., 130 S.Ct. 2149, 2158 (2010).  This standard requires more than "trivial success on the merits" or a "purely procedural victory."  Id. at 2158.  It is important to note that there is no presumption that a successful party in an ERISA action should receive an award in the absence of exceptional circumstances.  McPherson v. Employees' Pension Plan of American Re-Insurance Company, Inc., et al., 33 F.3d 253, 254 (3d Cir. 1994); see also Ellison v. Shenango, Inc. Pension Bd., 956 F.2d 1268, 1275 (3d Cir. 1992) (there is no presumption that a prevailing party is entitled to attorneys' fees under Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1)).

Prior to the Supreme Court's decision in Hardt, courts in the Third Circuit applied a five factor test to determine whether to award attorneys' fees in ERISA actions.  Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983).  Those factors are: (1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against

the offending parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position." Id.

In Hardt, the Supreme Court held that, while not required, after meeting the "some degree of success" test, a court may still consider the five factor test to determine whether to award attorneys' fees. Hardt, 130 S.Ct. at 2158 n.8. Because it will be helpful to the parties, I will proceed with a consideration of the Ursic factors.

## III.  DISCUSSION

### A.  The Ursic Factors

The Ursic factors are not requirements in the sense that a party must demonstrate all of them in order to warrant an award of attorney's fees, but rather they are elements a court must consider in exercising its discretion. Fields v. Thompson Printing Co., 363 F.3d 259, 275 (3d Cir. 2004). The factors are flexible guidelines, and no single factor is determinative.

#### 1.  Culpability or Bad Faith

Under the first factor, a court considers whether the non-prevailing party's conduct involved bad faith or engaged in culpable conduct. McPherson, 33 F.3d at 257. Bad faith normally connotes an ulterior motive or sinister purpose. Ford v. Temple Hosp., 790 F.2d 342, 347 (3d Cir. 1986). A losing party may be culpable, however, without having acted with an ulterior motive. A party is not culpable merely because it has taken a position that did not prevail in litigation. In a civil context, culpable conduct is commonly understood to mean conduct that is blameable, censurable, involving the breach of a legal duty or the commission of a fault. McPherson, 33 F.3d at 257. Such

conduct normally involves something more than simple negligence, but may not involve malice or a guilty purpose.  Id.

Here, the plaintiffs argue that there was no culpability or bad faith on their part. Rather, they insist, there was simply a reasonable misunderstanding of the facts.  I find this explanation curious because some of the plaintiffs' conduct is clearly culpable and some strongly suggests bad faith.  For example, the plaintiffs insisted that they did not forfeit their rights to benefits under the Restoration Plan because they had been involuntarily terminated from their employment with the defendants.  In my memorandum, I characterized this allegation as "more than a little disingenuous:"

> It is interesting to note that as early as June 17, 2008, the defendants indicated in an email to the plaintiffs that the plaintiffs had repeatedly expressed their desire to terminate their employment and enter into private practice. There is no email response from the plaintiffs refuting that understanding. Further, on September 12, 2008, counsel for the plaintiffs confirmed that both sides had mutually agreed that Drs. Sarno and Feinstein would continue their employment with the defendants until November 30, 2008. Also in that letter, the plaintiffs provided the requested notice to the defendants that they had decided to terminate their employment with Saint Luke's as of November 30, 2008. This is in direct contravention to their allegation in the complaint that they had been involuntarily terminated by the defendants on November 30, 2008. It is also telling that well in advance of this letter, the plaintiffs were reminded by the defendants that, should they voluntarily leave their employment, they would not be entitled to benefits under the Restoration Plan. It seems more than a little disingenuous to allege otherwise in this complaint.

Feinstein, et al. v. Saint Luke's Hospital, et al., No. 10-4050, 2011 U.S. Dist. LEXIS 121191, at *11 (E.D. Pa. October 19, 2011).

I also found it troubling that the plaintiffs withheld this evidence from the court. In their complaint, the plaintiffs alleged an employment dispute, subsequent negotiations, and an involuntary termination, yet none of the several exhibits attached to the complaint provided a context for these allegations.  When the defendants filed their motion to dismiss, however, several documents were included which described the negotiations conducted among the parties to ensure the orderly transition after the departure of the plaintiffs from the hospital.  One important and unrefuted fact ran consistently through the parties' communications:  the plaintiffs desired to enter into private practice and voluntarily terminated their employment with the defendants.  As I indicated in my Memorandum, the details of the negotiations were not important, "but as a whole they bolster the finding that the allegation of involuntary termination is shockingly less than accurate."  Id. at *14 n. 6.

Furthermore, with no support in the record, the plaintiffs repeatedly alleged that they had been assured by the defendants that the two plans were merged and would work in tandem, and that the Restoration Plan's benefits would be transferred, merged, protected, vested, and paid under the Qualified Pension Plan.  The plaintiffs cite a memorandum distributed by the defendants' Human Resources Department which, the plaintiffs claimed, demonstrated that the defendants merged and vested all benefits from the Restoration Plan into the Qualified Plan.  A careful reading of the pertinent part of that memorandum, however, belies this claim:

> On March 27, 2000, the Board of Trustees voted to move all benefits accrued under the restoration plan through December 31, 1999 into the qualified pension plan. . . .

> Our intent is to move benefits accrued under the
> restoration plan through December 31, 2002 into the
> qualified plan in 2003.

See Compl. Exhibit A.  The benefits accrued under the Restoration Plan through

December 31, 1999 were moved into the Qualified Pension Plan, and there was no

indication or promise that the plans were to merge or be administered in tandem.  Further,

there was no promise that such a transfer would ever be repeated.  The memorandum

contained nothing more than an intention of the defendants to repeat the transfer one time

in the future.

The plaintiffs also cite a slide-show presentation used by the defendants to explain

the Restoration Plan to eligible employees.  See Compl. Exhibit C.  The "slide" on page

six, entitled "Update effective 12/31/99," explains that on December 31, 1999, the

"accrued restoration benefit" became "protected under the qualified plan," and those

benefits were "vested without the tax implications associated with restoration plan

vesting (qualified plan benefits are taxed when paid)."  Id. at 6.  This update describes

one vesting of benefits and makes no other claim of future vesting or merging of the two

pension plans.  The fact remains that the defendants have two separate pension plans, i.e.,

a qualified pension plan and a non-qualified pension plan.

That the plaintiffs made the assertions of involuntary termination in the complaint,

knowing those assertions were wholly unsupported by the facts, is evidence of bad faith.

Withholding the documents from the court, however, is archetypal bad faith.  Likewise, it

was culpable conduct to insist in the face of significant evidence to the contrary that the

defendants had assured them that the two plans were merged and would be managed in

6

tandem, and that the Restoration Plan's benefits would be transferred, merged, protected, vested, and paid under the Qualified Pension Plan.

Certainly, this first <u>Ursic</u> factor weighs heavily in favor of granting the defendants an award of attorneys' fees.

### 2. Ability to Satisfy an Award of Attorneys' Fees

The plaintiffs argue that their ability to satisfy an award of fees should not be assumed and that an award against them would pose a hardship. The plaintiffs have provided no evidence to support this allegation. In fact, in their motion for attorneys' fees, the defendants requested that the plaintiffs file financial information under seal to support the anticipated allegation of an inability to satisfy an award of fees and costs. The plaintiffs chose not to do so, which was their right. Nevertheless, without such information, my only option is to *assume* that two specialist physicians are able to satisfy a rather modest award of attorneys' fees and costs. The plaintiffs cannot have it both ways. Thus, I will regard this factor as neutral in the balancing of the other <u>Ursic</u> factors, the strength of which in favor of an award remains substantial.

### 3. Deterrent Effect from Awarding Fees

This factor requires courts to consider whether an award of attorneys' fees would serve the objectives of ERISA by deterring similar conduct in the future. The plaintiffs argue that there is no need of deterrence here because there was only a disagreement with their interpretation of the facts surrounding their separation of employment. In fact, amazingly, the plaintiffs characterize their interpretation of the facts as "honestly held, good-faith beliefs concerning the circumstances of the termination of their employment."

Given the evidence in this case, this characterization is more than unreasonable.  The plaintiffs' complaint was rife with misleading and unsupported allegations.  Deterring the filing of such a complaint serves ERISA's objectives.  Further, an award of fees would discourage other plaintiffs from attempting to mislead the court by providing exhibits that do not accurately portray the full nature of what transpired between the parties.  Thus, I must again find that the third Ursic factor strongly favors an award of fees.

### 4.  Benefit Conferred on the Plan as a Whole

There is a significant benefit conferred on other Plan participants by an award of attorneys' fees and costs.  Such an award preserves Plan assets in the Qualified Plan and ensures the continued viability of the Restoration Plan, a top hat plan which does not require the setting aside of benefits.  Having the defendants assume the fees and costs would negatively impact the financial viability of both plans and the remaining participants who will qualify for benefits in the future.  This factor also weighs strongly in favor of an award of attorneys' fees and costs.

### 5.  Relative Merits of the Parties' Positions

The final Ursic factor considers the relative merits of the parties' positions.  I dismissed the plaintiffs' complaint as misleading and unsupported by the record.  The plaintiffs' position throughout this action was meritless.  Accordingly, this final factor also weighs strongly in favor of an award of attorneys' fees and costs.

**B.  Calculating the Award**

The starting point for determining the reasonableness of a fee award is the lodestar calculation.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  Under the lodestar

approach, a court determines the reasonable number of hours expended on the litigation

and multiplies it by a reasonable hourly rate.  The product of this calculation is a

presumptively reasonable fee.  District courts "review the time charged, decide whether

the hours set out were reasonably expended for each of the particular purposes described

and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"

Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 178 (3d Cir. 2001).  The party seeking

attorneys' fees has the burden to prove that its request is reasonable.  Potence v. Hazleton

Area Sch. Dist., 357 F.3d 366, 374 (3d Cir. 2004).  To meet its burden, a fee applicant

must "produce satisfactory evidence, in addition to the attorney's own affidavit, that the

requested rates are in line with those prevailing in the community for similar services by

lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stetson,

465 U.S. 886, 895 n. 11 (1984).  Conversely, the party opposing the fee award has the

burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants

notice, the reasonableness of the requested fee.  Loughner, 260 F.3d at 178.  A district

court cannot decrease a fee award based on factors not raised by the adverse party.  Id.

A reasonable hourly rate is calculated according to the prevailing market rates in

the community where the suit is brought.  See Interfaith Cmty. Org. v. Honeywell Int'l,

Inc., 426 F.3d 694, 705, 708 (3d Cir. 2005).  In order "to determine 'the prevailing

market rates in the relevant community,' a court must 'assess the experience and skill of

the prevailing party's attorneys and compare their rates to the rates prevailing in the

community for similar services by lawyers of reasonably comparable skill, experience,

and reputation.'"  Id. at 708.

Joshua Bachrach, counsel for the defendants, attached to the motion a detailed affidavit which described his vast experience and knowledge of ERISA law.  Mr. Bachrach is a partner at his firm and has been practicing law for twenty years.  The affidavit also provides information on the many ERISA cases he has handled throughout the country, and the many articles on ERISA subject matter that he has written.  Mr. Bachrach is also a frequent speaker on ERISA law.

The defendants also provided a survey of recent cases in our district which discussed reasonable attorney fee rates in our area.  In <u>Mack Trucks, Inc. v. International Union</u>, No. 07-3737, 2011 U.S. Dist. LEXIS 108279 (E.D. Pa. Sept. 22, 2011), a class action lawsuit involving an ERISA plan, the court awarded attorneys' fees in the range of $475 to $275 per hour.  In <u>Roofers Local 30 Combined Welfare Fund</u>, No. 06-3787, 2010 U.S. Dist. LEXIS 68250 (E.D. Pa. July 8, 2010), the court described a rate of $250 per hour as falling within the reasonable range.  In <u>Carpenters Pension v. Grosso</u>, No. 07-5013, 2009 U.S. Dist. LEXIS 69020 (E.D. Pa. Aug. 6, 2009), the court awarded reasonable fees of $275 for a shareholder and $230 for an associate.  Here, Mr. Bachrach indicated that he charged the defendants a fee of $235 per hour.  Given his expertise in this area of law and the prevailing rates in this area, I find that Mr. Bachrach's rate is a reasonable one.

Mr. Bachrach attached to his affidavit a copy of his itemized bill through August 1, 2011, which included a total amount of $15,672.  He also added an additional $3,000 in fees associated with drafting this motion for an award of fees, bringing the final total to $18,672.  With the exception of two and a half hours of time, all of the fees being

claimed are for work performed by Mr. Bachrach.  The defendants contend that all of the hours expended are reasonable and should be awarded in full.  The plaintiffs, on the other hand, only address the threshold issue of whether the defendants should receive an award, and argue that the lodestar should not be adjusted upward.  They make no challenge to the amount of hours claimed or to the attorney's rate per hour claimed.  Accordingly, I find that the number of hours claimed in the affidavit and the rate Mr. Bachrach charged the defendants per hour are reasonable.

Further, the defendants indicated that they have incurred costs for photocopying, court fees, etc., in the amount of $139.07.  These costs are reasonable and will also be awarded.

Finally, the defendants request that I adjust the lodestar upward based on the quality of representation provided by Mr. Bachrach.  A court may do so where the attorney's work is so superior and outstanding that it far exceeds the expectations of clients and normal levels of competence.  Rode v. Dellarciprete, 892 F.2d 1177, 1184 (3d Cir. 1990).  Although Mr. Bachrach zealously represented his client in this matter, I hesitate to find that this case was so out of the ordinary that it required the level of representation contemplated by the court in Rode.

An appropriate Order follows.

11